Ryan Chabot
David B. Bassett (*Pro Hac Vice* Pending)
Sanaz Payandeh (*Pro Hac Vice* Pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel. (212) 230-8800
Fax (212) 230-8888
ryan.chabot@wilmerhale.com
david.bassett@wilmerhale.com
sanaz.payandeh@wilmerhale.com

Kevin Díaz (*Pro Hac Vice* Pending)
COMPASSION & CHOICES
101 SW Madison Street
Unit 8009
Portland, Oregon 97207
Tel. (503) 943-6532
Fax (503) 228-9160
kdiaz@compassionandchoices.org

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUDITH GOVATOS**, **ANDREA SEALY**, **DR. PAUL BRYMAN**, DO, FACOI, AGSF, CMD, **and DR. DEBORAH PASIK**, MD, FACR,<br><br>                Plaintiffs,<br><br>vs.<br><br>**PHIL MURPHY**, Governor of New Jersey, **MATTHEW J. PLATKIN**, in his official capacity as Attorney General of New Jersey, **JUDITH M. PERSICHILLI**, in her official capacity as New Jersey Health Commissioner, **ANTONIA WINSTEAD**, in her official capacity as Executive Director of New Jersey Board of Medical Examiners; **GRACE C. MACAULAY**, in her official capacity as the Prosecutor of Camden County, New Jersey.<br><br>                Defendants. | Civil Action No. 2:23-cv-12601<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983** |

## INTRODUCTION

1.      New Jersey is a leader in medical research and care.  The State is home to vanguards in the pharmaceutical, biotechnology, and healthcare industries, and the State's renowned universities provide groundbreaking research and clinical care to academics and patients from around the country and world.  It is unsurprising, then, that New Jersey has also been a leader in recognizing the right of mentally competent, terminally ill patients to seek medical aid in dying from their physicians.  In 2019, the State legislature passed the New Jersey Medical Aid in Dying for the Terminally Ill Act (P.L. 2019, c. 59) (the "Act").  With the Act's passage, New Jersey became the ninth State in the country to allow qualified patients to obtain a prescription from their physician to ease suffering during their final stages of life.  But access to this end-of-life care is denied to non-resident patients under New Jersey law, even if these patients otherwise qualify for a prescription under the Act.  This discriminatory denial violates the United States Constitution.

2.      Plaintiffs Judith Govatos, Andrea Sealy, Dr. Paul Bryman, and Dr. Deborah Pasik bring this action to challenge the constitutionality of the Act, particularly the Act's residency requirements.  First, the Act's narrow definition of a "qualified terminally ill patient" as a "capable adult who is a resident of New Jersey" unconstitutionally limits the Act's protection to New Jersey residents.

New Jersey Medical Aid in Dying for the Terminally Ill Act, C.26:16-3. Second, the Act's requirement that the terminally ill patient demonstrate New Jersey residency similarly unconstitutionally limits the Act's protection to New Jersey residents. *Id.* at C.26:16-4(a), C.16-11. In addition, the Act's requirement that a New Jersey treating physician verify the New Jersey residency of the terminally ill patient unconstitutionally limits the ability of physicians to provide care under the Act. *Id.* at C.16-6(a)(2).

3.    By using residency status to prospectively deny otherwise qualified patients, like Judith Govatos and Andrea Sealy, access to medical care and physicians, like Dr. Paul Bryman and Dr. Deborah Pasik, the ability to provide that care, the Act violates the Privileges and Immunities Clause (Art. IV, § 2), the Commerce Clause (Art. I, § 8), and the Equal Protection Clause (Amend. XIV, § 2) of the United States Constitution.

4.    Plaintiffs seek declaratory and injunctive relief to prevent enforcement of the Act's unconstitutional residency requirement.

## THE PARTIES

5.    Plaintiff Judith Govatos is a 79-year-old retired non-profit executive who resides in Wilmington, Delaware. Ms. Govatos has been diagnosed with Stage IV lymphoma and is not a candidate for a bone marrow transplant at her age. Ms. Govatos' body cannot withstand additional rounds of chemotherapy

treatment—making a bone marrow transplant the only remaining treatment for her.

Ms. Govatos has lived a happy and meaningful life and does not want to die.

Should her suffering become unbearable, however, she wishes to have the option

of medical aid in dying.  Because no statute authorizing medical aid in dying exists

in Delaware, Ms. Govatos would like the option of accessing medical care in New

Jersey.  However, due to the Act's unconstitutional residency requirement,

Ms. Govatos is prohibited from accessing medical aid in dying in New Jersey.

6.    Plaintiff Andrea Sealy is a 43-year-old resident of Philadelphia,

Pennsylvania.  Since 2017, Ms. Sealy has been receiving treatment for Stage 4

metastatic breast cancer, which had metastasized to her hip and spine.  Ms. Sealy

does not feel fully free to live because Pennsylvania does not yet allow medical aid

in dying—making her extremely anxious for when the end eventually comes.

Ms. Sealy would thus like the option of availing herself of medical care in New

Jersey so she can have the gift of "autonomy to go out peacefully."  However, due

to the Act's unconstitutional residency requirement, Ms. Sealy is prohibited from

accessing medical aid in dying in New Jersey.

7.    Plaintiff Dr. Paul Bryman is a physician and geriatrician who lives in

Pennsauken, New Jersey.  Dr. Bryman has been a medical director at a hospice in

Camden County, New Jersey since 2013.  Dr. Bryman has provided New Jersey

residents with medical aid in dying, pursuant to the Act.  The Act's

unconstitutional residency requirement limits Dr. Bryman's ability to help patients who would like to receive medical aid in dying because he cannot treat out-of-state residents without facing potential criminal or civil liability. Therefore, the Act prevents Dr. Bryman from providing one type of care he deems to be appropriate to both in-state and out-of-state patients who request it, all of whom face critical end-of-life decisions. This harms his ability to transact in interstate commerce. Without the Act's residency requirement, Dr. Bryman would be able to provide medical aid in dying by writing or recommending prescriptions for qualified non-resident patients pursuant to the same medical standard of care that applies to his patients residing in New Jersey—without fear of violating the unconstitutional law.

8.     Plaintiff Dr. Deborah Pasik is a physician licensed to practice medicine in New Jersey. During her medical career, Dr. Pasik had specialized in internal medicine and rheumatology, but now her practice is limited to working with terminally ill individuals. In her work, Dr. Pasik is contacted regularly by terminally ill patients, some of whom live out-of-state. Dr. Pasik would risk criminal and civil penalties, as well as potential medical board disciplinary actions, including the loss of her license to practice medicine, if she were to write a prescription for non-New Jersey residents who otherwise qualify for this care under the Act. Therefore, the Act prevents Dr. Pasik from providing non-resident patients with care consistent with her best medical judgment at one of the most

important moments in their lives.  Instead, Dr. Pasik is forced to either refer such

patients to another healthcare provider in another State that can qualify non-

residents or wait to provide care until the patients have successfully changed their

residency to New Jersey.  Often, the time required for patients to change their

residence is too long and they ultimately die before receiving care.  The disruption

in care while patients try to become New Jersey residents harms Dr. Pasik's ability

to provide patient care.  Without the Act's residency requirement, Dr. Pasik could

provide medical aid in dying by writing prescriptions for qualified non-resident

patients under the same medical standard of care as for her patients with New

Jersey residence.  Dr. Pasik brings this suit on her own behalf and on behalf of

patients who have contacted her and have been turned away because of the

residency requirement.

     9.    Defendant Phil Murphy ("Governor Murphy") is sued in his official

capacity as Governor of the State of New Jersey.  He is vested with the executive

power of the State and is required to see that New Jersey's laws—including laws

related to health care—are faithfully executed.  NJ. CONST. Art. V, §§ 1, Para. 11.

Governor Murphy is a person within the meaning of 42 U.S.C. § 1983 and is acting

under color of State law at all times relevant to this complaint.

     10.    Defendant Matthew J. Platkin ("AG Platkin") is sued in his official

capacity as Attorney General of the State of New Jersey.  AG Platkin represents

the State of New Jersey in all civil and criminal matters in which the State is a party or has an interest. N.J.S.A 52:17b-98; N.J.S.A. 52:17A-4(e). AG Platkin also has general supervision of criminal prosecutions. AG Platkin is a person within the meaning of 42 U.S.C. § 1983 and is acting under color of State law at all times relevant to this complaint.

11.     Defendant Judith M. Perischilli ("Commissioner Perischilli") is sued in her official capacity as Commissioner of the New Jersey Department of Health (NJDH). The NJDH is responsible for enforcing the laws and regulations related to health and safety. N.J.A.C. 8:52-14. Commissioner Perischilli is a person within the meaning of 42 U.S.C. § 1983 and is acting under color of State law at all times relevant to this complaint.

12.     Defendant Antonia Winstead ("Executive Director Winstead") is sued in her official capacity as the Executive Director of New Jersey Board of Medical Examiners (NJBME). The NJBME has the power and duty to license and certify health professionals, to investigate and hold hearings regarding complaints and charges of unprofessional conduct and illegal practice of medicine, and to refer substantiated complaints to the appropriate prosecutorial authority. NJ Rev Stat § 45:9-1, et seq. Executive Director Winstead is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of State law at all times relevant to this complaint.

13.     Defendant Grace C. MacAulay is sued in her official capacity as the Prosecutor of Camden County, New Jersey.  As Prosecutor, Ms. MacAulay investigates and prosecutes all indictable crimes in Camden County, New Jersey. Ms. MacAulay is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of State law at all times relevant to this complaint.

14.     Defendants, through their respective duties and obligations, are responsible for enforcing the Act.  Each defendant, and those subject to their direction, supervision, and control, have the responsibility to intentionally perform, participate in, aid and/or abet in the enforcement of the Act in some manner.

## JURISDICTION AND VENUE

15.     Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation of rights secured by the United States Constitution, under color of State law.

16.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because (1) all Defendants reside within the State of New Jersey and (2) a substantial part of the events giving rise to Plaintiffs' claims will occur in this District.

## FACTUAL BACKGROUND

*The Act*

18.    On August 1, 2019, the Medical Aid in Dying for the Terminally Ill Act went into effect in New Jersey.  On this date, New Jersey became the ninth State in the country to allow qualified patients to obtain a prescription from their physician to ease suffering during their final moments of life.  But access to this end-of-life care is denied to non-resident patients under New Jersey law, even if these patients otherwise qualify for a prescription under the Act.

19.    At C.26:16-2, the Act defines "qualified terminally ill patient" as a "a capable adult who is a resident of New Jersey."  New Jersey Medical Aid in Dying for the Terminally Ill Act, C.26:16-2.

20.    At C.26:16-4, the Act includes among the necessary "[c]onditions for request for medication" that the terminally ill patient show New Jersey residency. *Id.* at C.26:16-4.  And at C.26:16-11, the Act lays out the methods for proving this residency, requiring a patient to furnish to the attending physician a copy of one of the following: a driver's license or non-driver identification card issued by the New Jersey Motor Vehicle Commission, proof of registration to vote in New Jersey, a New Jersey resident gross income tax return filed for the most recent tax year, or "any other government record that the attending physician reasonably

believes to demonstrate the individual's current residency in [New Jersey]." *Id.* at C.26:16-11.

21.    At C.26:16-6, the Act requires that the attending physician verify that the terminally ill patient has provided proof of New Jersey residency, in compliance with C.26:16-11. *Id.* at C.26:16-6.

22.    At C.26:16-18, the Act generally permits penalties for violation of the Act's provisions: "The penalties set forth in this section shall not preclude the imposition of any other criminal penalty applicable under law for conduct that is inconsistent with the provisions of P.L.2019, c.59 (C.26:16-1 et al.)." *Id.* at C.26:16-18.

*Judith "Judy" Govatos*

23.    Ms. Govatos is a fully competent 79-year-old retired non-profit executive and a resident of Wilmington, Delaware. Ms. Govatos worked for many years as Executive Director of the Delaware Academy of Medicine, and after that with The Arc of Delaware, a statewide non-profit organization dedicated to advocating for and serving Delaware residents with intellectual and developmental disabilities. Ms. Govatos has been diagnosed with Stage IV lymphoma.

24.    Ms. Govatos has been living with lymphoma since 2014. She underwent an initial round of chemotherapy in 2015, which subjected her to a high fever and severe joint and bone pain, but sent the cancer into remission.

25.     Then, in March 2018, painful gut problems led to a terrible realization:  Ms. Govatos' cancer was back.  Between May 2018 and January 2019, Ms. Govatos endured additional rounds of intense chemotherapy, which were accompanied by debilitating complications, such as temporary blindness and not knowing her own name, and several overnight hospital stays.  After discussions with her doctor, Ms. Govatos made the decision to no longer receive chemotherapy, as it is simply too hard on her body.  As a result, Ms. Govatos is living with a cancer that could end her life at any time.

26.     Ms. Govatos does not want to die.  However, she understands that her time left to live is limited.  She is also worried that hospice care may not manage the pain and symptoms that will accompany the end of her life.  In addition to these worries, Ms. Govatos is allergic to many medications used in hospice care— increasing the likelihood of a very painful death.  It is important to Ms. Govatos that she maintain control of her medical decisions during the entire course of her end-of-life treatment, which includes medical decisions surrounding her death. Ms. Govatos wants to direct and control her end-of-life care.

27.     Ms. Govatos has been a proponent of medical autonomy since 1980, when she witnessed her aunt's care after a stroke.  Once it became clear that her aunt would not recover from the stroke, Ms. Govatos attempted to advocate for her aunt, who had expressed to Ms. Govatos that she would want life sustaining

10

treatment withdrawn.  Ms. Govatos' efforts to honor her aunt's wishes, and to withdraw life sustaining treatment, were unsuccessful, and her aunt ended up sustaining a prolonged and unnecessarily painful death.  With this personal experience in mind, when Ms. Govatos decides that her suffering has become too unbearable, she wishes to have the option to use medical aid in dying to secure a peaceful death.

28.     Further, Ms. Govatos believes that merely knowing that she has the option of medical aid in dying will provide a palliative effect.  It will reduce her anxiety by providing her with peace of mind to know that she will not have to suffer needlessly.

29.     Ms. Govatos lives within driving distance of New Jersey.  She is over 18 years old, capable of making an informed decision, and under the care of a physician for a terminal illness.  *See* 18 New Jersey Medical Aid in Dying for the Terminally Ill Act, C.26:16-3.  The only thing that would prevent Ms. Govatos from accessing the medical aid that she desires—were her prognosis to worsen—is the Act's unconstitutional residency requirement.  *See id*. at C.26:16-3, C.26:16-4(a), C.16-11, C.16-6(a)(2).

30.     Given her current prognosis, Ms. Govatos is at the point in her life where she would like to start making end-of-life arrangements now, including finding a supportive physician in the State of New Jersey.  However, the

unconstitutional residency requirement in the statute precludes her from taking

those steps, and the statute is thereby causing her needless stress and uncertainty.

Ms. Govatos would very much like the option of accessing medical aid in dying at

the point when her prognosis becomes six months or fewer left to live.

Ms. Govatos does not want to—and, indeed, cannot—wait to start this legal

process only after such an unfortunate eventuality and, as a consequence of such

delay, thereby lose any hope of timely accessing her desired end-of-life care.

Therefore, she brings the case now in hopes of achieving a timely resolution of this

critical constitutional issue while she still can.  If medical aid in dying were

available to non-New Jersey residents, Ms. Govatos would promptly exercise the

option of finding a New Jersey-based physician who would support her through the

process of evaluating and qualifying her for this end-of-life option.

*Andrea "Andy" Sealy*

31.    Ms. Sealy is a 43-year-old resident of Philadelphia, Pennsylvania.  In

March 2017, Ms. Sealy underwent a double mastectomy for what she then believed

to be Stage 1 breast cancer.  However, Ms. Sealy's post-operation scans revealed a

diagnosis of Stage 4 metastatic breast cancer, which had metastasized to her hip

and spine.  Since then, Ms. Sealy has undergone 10 surgeries and multiple rounds

of radiation and chemotherapy.

32.     Ms. Sealy has a wonderful life and does not want to die.  She has a positive spirit, owing in large part to the love and support of those who surround her.  Indeed, throughout her battle with breast cancer, Ms. Sealy has not lost her thirst for life and adventure.  Soon after her diagnosis, Ms. Sealy decided to leave her job and to just "start living," which she has continued to do while her cancer has continued to spread.

33.     But Ms. Sealy does not feel fully free to live because Pennsylvania does not yet allow medical aid in dying—making her extremely anxious for when the end eventually comes.  Ms. Sealy would thus like the option of availing herself of medical care in New Jersey so she can have the gift of "autonomy to go out peacefully," including the ability to plan for her end-of-life care.  Indeed, Ms. Sealy believes that merely knowing that she has the option of medical aid in dying will provide a palliative effect.  It will reduce her anxiety by providing her with peace of mind to know that she will not have to suffer needlessly.

34.     Ms. Sealy lives within driving distance of New Jersey.  But for her non-New Jersey residency, Ms. Sealy could qualify for medical aid in dying under the Act if her prognosis were to worsen to six months or less to live.  She is over 18 years old, capable of making an informed decision, and under the care of a physician for a terminal illness.  *See* New Jersey Medical Aid in Dying for the Terminally Ill Act, C.26:16-3.  The only thing that would prevent Ms. Sealy from

13

accessing the medical aid she desires—were her prognosis to worsen—is the Act's unconstitutional residency requirement.  *See id*. at C.26:16-3, C.26:16-4(a), C.16-11, C.16-6(a)(2).

35.    Given her current prognosis, Ms. Sealy is at the point in her life where she would like to start making end-of-life arrangements now, including finding a supportive physician in the State of New Jersey.  However, the unconstitutional residency requirement in the statute precludes her from taking those steps, and the statute is thereby causing her needless stress and uncertainty.  Ms. Sealy would very much like the option of accessing medical aid in dying should her prognosis be six months or fewer left to live.  Ms. Sealy does not want to—and, indeed, cannot—wait to start this legal process only after such an unfortunate eventuality and, as a consequence of such delay, thereby lose any hope of timely accessing her desired end-of-life care.  Therefore, she brings the case now in hopes of achieving a timely resolution of this critical constitutional issue while she still can.  If medical aid in dying were available to non-New Jersey residents, Ms. Sealy would promptly exercise the option of finding a New Jersey-based physician who would support her through the process of evaluating and qualifying her for this end-of-life option as appropriate.

*Dr. Paul Bryman*

36.     Plaintiff Dr. Paul Bryman is a physician and geriatrician who lives in Pennsauken, New Jersey.  Dr. Bryman practices medicine in New Jersey (and Pennsylvania), is board certified in Internal Medicine, and holds a Certificate of Added Qualification in Geriatric Medicine.  He was certified as a Diplomate of the American Board of Hospice and Palliative Medicine from 2007 to 2015.  He is licensed to prescribe controlled substances.

37.     Dr. Bryman has been the Medical Director of a hospice in Camden County, New Jersey since 2013.  He is also an Associate Professor of Osteopathic Medicine in Stratford, New Jersey, and a Course Director for the Death and Dying second year curriculum.  During his time as Medical Director of the hospice, Dr. Bryman has cared for thousands of terminally ill patients.

38.     Separately, Dr. Bryman has provided New Jersey residents with medical aid in dying, pursuant to the Act.  The Act's unconstitutional residency requirement limits Dr. Bryman's ability to help patients who would like to receive medical aid in dying because he cannot treat out-of-state residents without facing potential criminal or civil liability.  Therefore, the Act prevents Dr. Bryman from providing one type of care that he deems to be appropriate to both in-state and out-of-state patients who request it, all of whom face critical end-of-life decisions.  This harms his ability to transact in interstate commerce.  Without the Act's

residency requirement, Dr. Bryman would be able to provide medical aid in dying by writing or recommending prescriptions for qualified non-resident patients pursuant to the same medical standard of care that applies to his patients residing in New Jersey—without fear of violating the unconstitutional law.

39.     In the past, Dr. Bryman has been the primary physician for a number of patients who have opted to go through the qualification process and ultimately fill a prescription for medication under the Act.  In addition, he has been the primary physician for several other patients who were considering medical aid in dying—but for various reasons never received a prescription.  More recently, Dr. Bryman has served as the secondary consulting physician for patients who would like to receive a prescription pursuant to medical aid in dying.

40.     The Act requires that Dr. Bryman—whether he is the primary physician or the consulting physician—confirm that a patient seeking medical aid in dying is a New Jersey resident.  New Jersey Medical Aid in Dying for the Terminally Ill Act, C.16-6(a)(2).

41.     Due to the Act's unconstitutional residency requirement, Dr. Bryman is unable to qualify non-New Jersey residents for medical aid in dying, denying them otherwise appropriate medical care solely due to their residency status. However, if these patients had been residents of New Jersey, Dr. Bryman would have treated them as he does any other resident patient.

42.    The Act bars Dr. Bryman from providing medical aid in dying to non-resident patients who would otherwise be eligible to receive that care.  Medical aid in dying is the only medical care option in Dr. Bryman's practice for which a patient's lack of New Jersey residency categorically denies the otherwise appropriate care that he can provide.

43.    Dr. Bryman's inability to offer medical aid in dying to non-New Jersey residents interferes with his ability to transact and engage in commerce because it limits the number of patients he can treat and forces him to decline to treat prospective non-New Jersey resident patients who seek medical aid in dying.

44.    The Act's residency requirement also violates Dr. Bryman's non-New Jersey resident patients' constitutional rights.

### Dr. Deborah Pasik

45.    Dr. Pasik has been practicing medicine in New Jersey for over 35 years.  Her focus has been on internal medicine, rheumatology, end-of life care, and community education.

46.    Dr. Pasik's practice is now dedicated to providing end-of-life care for patients and families living with serious and terminal illnesses by counseling them on their options and by evaluating and qualifying them for and, where appropriate, providing them a prescription under the Act.

17

47.    To be an effective clinician, Dr. Pasik must establish trusting relationships with patients, families, and providers at a medically complex and highly emotional time.

48.    Dr. Pasik is licensed to practice medicine in New Jersey, but not in any other jurisdiction.

49.    Dr. Pasik primarily practices in Morristown, New Jersey, which is about 40 miles from both the New York and Pennsylvania borders and about 150 miles from the Delaware border.

50.    It is typical for Dr. Pasik to provide consultative services for 5-10 patients receiving end-of-life care at any point.  This care generally includes certifying patient terminality, reviewing options for end-of-life care, evaluating and qualifying patients for care, and, when appropriate, providing a prescription under the Act.  In a typical year, about 35 of her patients die after self-ingesting a prescription under the Act.

51.    Dr. Pasik has significant experience with the process of medical aid in dying.  In addition to caring for many patients who have sought medical aid in dying, she participated in establishing policy for implementation of the Act at a large healthcare system.  Dr. Pasik founded the non-profit organization, New Jersey Death with Dignity, to educate the public and the medical community about medical aid in dying, to mentor physicians seeking to participate as prescribers,

and to help patients find care.  She also works for a large healthcare system, where

she educates healthcare teams and evaluates, qualifies, and prescribes medication

to patients under the Act.  Dr. Pasik has educated both lay people and healthcare

providers around New Jersey and the Northeast about the Act.  She has started a

bereavement group for families who have loved ones who have used a prescription

under the Act.  She also developed a core curriculum presentation about end-of-life

suffering and medical aid in dying, and she has given several presentations on the

subject to health networks across the State of New Jersey and in the Northeast

region.

52.     Due to her expertise, Dr. Pasik regularly fields inquiries from other

physicians about medical aid in dying.  In this capacity, Dr. Pasik assists with

questions about eligibility and helps to navigate clinical practice.  Dr. Pasik also

regularly advises physicians on the use of medical aid in dying.  On average,

Dr. Pasik fields questions about the practice of medical aid in dying from

healthcare providers for approximately five to ten cases a month.

53.     Dr. Pasik typically has at least five to ten patients engaged in the

process of pursuing medical aid in dying.  She writes about 50 prescriptions under

the Act per year.  Of these 50 prescriptions, about 35 patients die from self-

ingesting the medication.

54.     New Jersey provides Dr. Pasik with forms to be completed when assisting a patient through the process of medical aid in dying.  One form, the Attending Physician Compliance Form, has a checklist of actions that she must take to comply with the Act.  One of those checkboxes requires her to confirm that the patient requesting medical aid in dying is a resident of New Jersey.  Based on information and belief, New Jersey officials review and investigate any suspected non-compliance with the Act reflected in the forms.

55.     Dr. Pasik routinely receives inquiries about services to patients residing in New York, Connecticut, Delaware, and Pennsylvania.

56.     Dr. Pasik has regularly been contacted by patients who reside in New York who have asked about the availability of medical aid in dying.  Had these patients been residents of New Jersey, Dr. Pasik would have treated them as she did any other resident patient.  Because they were non-residents, however, she had to deny these patients medical care only due to their residency status.  When faced with these inquiries, the patients are told that they are ineligible for the treatment and are informed of the process to establish New Jersey residency.  This news can be distressing for those patients and can erode the trust and confidence in their medical care.

57.     Since the Act passed in 2019, Dr. Pasik has received about 20-25 requests from non-residents seeking a prescription for medical aid in dying under

20

the Act. Despite the likelihood that these individuals were otherwise eligible for medical aid in dying, Dr. Pasik cannot even consider these requests based only on the prospective patients' residency.

58.    Dr. Pasik's inability to offer medical aid in dying to non-New Jersey residents interferes with her ability to transact and engage in commerce because it limits the number of patients that she can treat and forces her to decline to treat non-New Jersey resident patients who seek medical aid in dying.

## FIRST CAUSE OF ACTION

### (The Act Violates the U.S. Constitution's Privileges and Immunities Clause)

59.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

60.    Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

61.    The Privileges and Immunities Clause in Article IV of the United States Constitution provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art IV, § 2.

62.    Thus, there are explicit protections for citizens of one State who travel in another State, intending to return home at the end of their journey.  These protections allow the visitor to enjoy the "Privileges and Immunities of Citizens in

the several States" that they visit. As such, the Privileges and Immunities Clause prohibits differential treatment of in-state and out-of-state residents that infringes on the fundamental right to travel.

63.    The Privileges and Immunities Clause and 42 U.S.C. § 1983 prohibits State officials from restricting non-resident visitors' access to medical care within its borders absent a substantial State interest and restrictions narrowly tailored to those interests.

64.    The Act's definition of "qualified terminally ill patient" and residency requirement violate the Privileges and Immunities Clause by limiting the availability of medical aid in dying to residents of New Jersey. Specifically, Mses. Govatos and Sealy are injured by their inability to access medical aid in dying based solely on their Delaware and Pennsylvania residency. Delaware and Pennsylvania do not offer medical aid in dying, so they will not be able to access this care even though an otherwise similarly situated New Jersey resident could access the care. Drs. Bryman's and Pasik's non-New Jersey resident patients are also injured by their inability to pursue medical aid in dying solely due to the Act's residency restriction.

65.    The Act creates an invidious classification that impinges on the right to interstate travel by denying non-residents access to New Jersey's medical care.

22

66.     The Act constitutes a failure to accord residents and non-residents, including Mses. Govatos and Sealy, equal treatment.

67.     The Act restricts out-of-state residents' ability to access medical services.

68.     The Act's definition of "qualified terminally ill patient" and residency requirement inhibit the ability of Mses. Govatos and Sealy, and Drs. Bryman's and Pasik's non-New Jersey resident patients, to receive medical care in New Jersey.

69.     The differential treatment between resident and non-resident patients, established by the Act, is not necessary to achieve any substantial State interest.

70.     The differential treatment between resident and non-resident patients, established by the Act, is not necessary to achieve any legitimate State interest.

71.     Plaintiffs are entitled to a declaration that the Act's residency requirement violates the Privileges and Immunities Clause on its face and as applied and is therefore unconstitutional.

72.     Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing the Act's residency requirement.

## SECOND CAUSE OF ACTION

**(The Act Violates the U.S. Constitution's Dormant Commerce Clause)**

73.     Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

74.     Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

75.     The Commerce Clause of Article I, Section 8, of the U.S. Constitution and 42 U.S.C. § 1983 bar State officials from enacting laws that discriminate against interstate commerce.

76.     The Act has a substantial effect on interstate commerce in the form of medical care.  The Act prevents Mses. Govatos and Sealy from receiving specific medical care after crossing State lines into New Jersey, even though they would otherwise qualify for this care.  The Act discriminates against Mses. Govatos and Sealy by preventing them from transacting in interstate commerce by restricting access to the purchase of medical care, solely on the basis of their residency.

77.     The Act also prevents Dr. Bryman and Dr. Pasik from providing specific medical services to existing patients crossing State lines from other States to New Jersey.  The Act prevents Dr. Bryman and Dr. Pasik from offering consultation to prospective out-of-state patients who would otherwise procure their services were Dr. Bryman and Dr. Pasik permitted to assist these patients with medical aid in dying.  Further, the Act violates the Dormant Commerce Clause because it prevents patients who reside in other States from procuring services in New Jersey from Drs. Bryman and Pasik, solely based on their residency.

78.     The Act discriminates against interstate commerce on its face.  By its terms, the Act distinguishes between New Jersey residents and out-of-state residents.  In doing so, the Act restricts an out-of-state resident's ability to access New Jersey medical care.  In the same manner, the Act restricts a physician in New Jersey from providing out-of-state residents with access to medical care afforded to otherwise identical New Jersey residents.

79.     Alternatively, the Act substantially burdens interstate commerce by discouraging non-residents from traveling to New Jersey.  In the same manner, the Act also substantially burdens interstate commerce by discouraging physicians practicing in New Jersey from attending to patients who do not meet the requirements of New Jersey residency.  That burden exceeds the benefits, if any, provided by the Act's residency requirement.

80.     Plaintiffs are entitled to a declaration that the Act's residency requirement violates the Dormant Commerce Clause on its face and as applied and is therefore unconstitutional.

81.     Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing the Act's residency requirement.

<u>**THIRD CAUSE OF ACTION**</u>

**(The Act Violates the U.S. Constitution's Equal Protection Clause)**

82.    Plaintiffs hereby reallege and incorporate by reference all preceding paragraphs, as if fully set forth herein.

83.    Plaintiffs state this cause of action against Defendants in their official capacities for purposes of seeking declaratory and injunctive relief.

84.    The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983 mandate that State and local government officials treat all similarly situated persons alike and broadly restricts invidious discrimination of individuals based on membership in a class, absent a legitimate State interest.

85.    The Act's definition of "qualified terminally ill patient" and residency requirement violate the Equal Protection Clause because the provisions invidiously discriminate against non-residents of New Jersey without a legitimate State interest.  Specifically, because they are members of a class of non-New Jersey residents, Mses. Govatos and Sealy, and Drs. Bryman's and Pasik's non-New Jersey resident patients, are injured by their inability to access medical aid in dying.  They are discriminated against by the State of New Jersey, based solely on their lack of residency status.  Mses. Govatos and Sealy's home States of Delaware and Pennsylvania have not authorized medical aid in dying, so neither Ms. Govatos

nor Ms. Sealy will be able to access this care—in Delaware, Pennsylvania, or in New Jersey—even though a similarly situated New Jersey resident would be able to access the exact same care.

86.    The Act results in invidious discrimination against a class of non-New Jersey residents that impinges on the right to interstate travel, a fundamental right.

87.    Alternatively, even if not a fundamental right, the Act results in invidious discrimination against a class of non-New Jersey residents that impinges on a benefit conferred upon similarly situated New Jersey residents.  The Act also restricts out-of-state residents' ability to access medical services.

88.    The Act constitutes a failure to accord residents and non-residents equal protection under federal law.  Specifically, the Act denies Mses. Govatos and Sealy and Drs. Bryman's and Pasik's non-New Jersey resident patients the ability to access end-of-life care in New Jersey even though identically situated New Jersey residents may access exactly this care.

89.    The differential treatment between resident and non-resident patients, established by the Act, is not necessary to achieve any legitimate State interest.

90.    Plaintiffs are entitled to a declaration that the Act's residency requirement violates the Constitution's Equal Protection Clause and is therefore unconstitutional.

91.    Plaintiffs are entitled to a permanent injunction enjoining Defendants from enforcing the Act's residency requirement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    On Plaintiffs' First, Second, and Third Causes of Action as follows:

    a.    For declaratory and injunctive relief as follows:

        i.    a declaration that the Act's definition of "qualified terminally ill patient" and residency requirement violate the Privileges and Immunities Clause of Art. IV, § 2 of the United States Constitution;

        ii.    a declaration that the Act's definition of "qualified terminally ill patient" and residency requirement violate the Commerce Clause of Article I, Section 8 of the United States Constitution;

        iii.    a declaration that the Act's definition of "qualified terminally ill patient" and residency requirement violate Equal Protection Clause of the United States Constitution;

        iv.    a declaration that each statutory and regulatory provision complained herein violates the Privileges and Immunities

Clause, the Dormant Commerce Clause, and the Equal

Protection Clause of the United States Constitution; and

    v.    an order permanently enjoining Defendants from

enforcing the Act's residency requirement;

    b.    For an award to Plaintiffs of their reasonable attorneys' fees and

costs pursuant to 42 U.S.C. § 1988; and

2.    All such further relief as the Court may deem equitable and proper.

Dated:  August 29, 2023

Respectfully submitted,

*/s/ Ryan Chabot*

Ryan Chabot
David B. Bassett (*Pro Hac Vice* Pending)
Sanaz Payandeh (*Pro Hac Vice* Pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel. (212) 230-8800
Fax (212) 230-8888
ryan.chabot@wilmerhale.com
david.bassett@wilmerhale.com
sanaz.payandeh@wilmerhale.com

Kelsey Quigley (*Pro Hac Vice* Pending)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Ste 400
Palo Alto, CA 94306
Tel. (650) 600-5031
Fax (650) 858-6100
kelsey.quigley@wilmerhale.com

Kevin Díaz (*Pro Hac Vice* Pending)
COMPASSION & CHOICES
101 SW Madison Street
Unit 8009
Portland, Oregon 97207
Tel. (503) 943-6532
Fax (503) 228-9160
kdiaz@compassionandchoices.org